```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
DAVID MEEHAN,                                              :
                                                           :   MEMORANDUM DECISION AND
                                    Plaintiff,             :   ORDER
                                                           :
          - against -                                      :   21-cv-2573 (BMC)
                                                           :
                                                           :
BROOKLIV LLC, ARI WEBER, and                               :
MICHAEL FISCHER,                                           :
                                                           :
                                    Defendants.            :
                                                           :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This wage case under the Fair Labor Standards Act and New York Labor Law is before me on defendants' second motion to vacate the default judgment against them.

The relevant procedural history of this case is as follows. The judgment in question was entered on October 13, 2021, the Court having granted plaintiff's motion for a default judgment on October 11, 2021. Although defendants had never appeared to oppose that motion or for any other reason, they filed a notice of appeal on November 10, 2021. They then filed their first motion to vacate the default judgment on November 15, 2021. The Court denied it on numerous substantive and procedural grounds the next day, on November 16, 2021. Nearly two months later, defendants filed this second motion to vacate the default judgment. On February 10, 2022, the Second Circuit dismissed the appeal for failure to file the required Form D.

This second motion is slightly more substantial than the first motion to vacate, but still not nearly sufficient to warrant the relief sought.

First, as plaintiff points out in opposition, this is effectively a motion for reconsideration, as the Court has already denied the defendants' request for exactly the same relief. Defendants

have ignored plaintiff's point in their reply memorandum, but plaintiff is correct. Numerous courts in this Circuit have rejected successive motions seeking the same relief unless they meet the standard for reconsideration. See e.g. Carnagie Institute of Washington v. Fenix Diamonds, LLC, 544 F. Supp. 3d 440, 451 (S.D.N.Y. 2021) ("The Court rejects plaintiffs' disguised motion for reconsideration, which identifies no legal or factual basis for departing from the law of the case."); Faiveley Transport USA, Inc. v. Wabtec Corp., No. 10-cv-4062, 2011 WL 1899730, at *4 (S.D.N.Y. May 13, 2011) (rejecting summary judgment motion as "thinly disguised attempt to relitigate issues" already lost on motion to dismiss); American Home Assur. Co. v. Merck & Co., Inc., 462 F. Supp. 2d 435, 444 (S.D.N.Y. 2006) (rejecting purported motion *in limine* because it was actually a motion to reconsider a prior ruling on summary judgment); Peyser v. Searle Blatt & Co., Ltd., No. 99-cv-10785, 2003 WL 1610772, at *1 (S.D.N.Y. March 24, 2003) (motion purported brought under Fed. R. Civ. P. 60(a) rejected because, *inter alia*, it was an "attempt[] to secure … reconsideration pursuant to Local Civil Rule 6.3").

In some of these cases, when a movant has sought relief for the second time, the movant had at least attempted to invoke some other federal rule than the one it had invoked the first time. Defendants here have not bothered. They have referred to both motions as motions to vacate the judgment, and they have asserted exactly the same legal grounds and arguments as they did in the first motion.

Once the motion is properly characterized as a motion for reconsideration, it becomes clear that defendants have not only failed to address the standard for relief, but they could not meet it if they had. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A party "must demonstrate that the Court overlooked ... matters that were put before it on the underlying motion." Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

Motions for reconsideration are governed by Local Rule 6.3. The Rule provides that the moving party must set forth "the matters or controlling decisions which counsel believes the Court has overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." Immigrant Def. Project v. U.S. Immigration and Customs Enf't, No. 14-cv-6177, 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." Ortega v. Mutt, No. 14-cv-9703, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (citation omitted). "A motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). Moreover, "[i]n a motion for reconsideration, a party may not introduce new facts or raise new arguments that could have been previously presented to the court." Belfiore v. Procter & Gamble Co., 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015).

Since defendants have made no argument that they satisfy the standard for reconsideration, it would have to be very clear to this Court that they meet that standard to grant the relief they are seeking for the second time. However, the contrary is true. Putting aside the untimeliness of their motion (Local Rule 6.3 requires that it be filed within 14 days, not nearly

3

two months), every argument in defendants' request for relief fails to approach the standard for reconsideration.

However, even if the Court reviewed this so-called "second motion to vacate default judgment" *de novo*, defendants would still not be close to obtaining relief. They do not satisfy any of the requirements, let alone all of them.

First, as defendants did in their first motion to vacate, they contend that the two individual defendants were never properly served. The docket shows that this Court had authorized special service under Fed. R. Civ. P. 4(f)(3) on the two individual defendants by multiple email addresses sent to them and an attorney who was acting for them (although that attorney did not appear in this action). The Court will not reiterate why it considered Rule 4(f)(3) to be appropriate, as defendants have never challenged that there was a basis for concluding that they were attempting to evade service. That is actually an understatement. The representations in plaintiff's motion for the Rule 4(f)(3) Order overwhelmingly show that defendants were trying to duck service.

Significantly, the Court entered the Rule 4(f)(3) Order *after* plaintiff had successfully served the LLC defendant, both through the Secretary of State as agent and through a waiver of service executed by defendant Ari Weber. There is no dispute that plaintiff made diligent efforts. There is no dispute that plaintiff sent out the substitute, court-required service to the addresses set forth in the Order. Thus, as the Court ruled in denying the first motion to vacate, service was proper.

Nevertheless, the two individual defendants each make one conclusory statement: "I certify that on August 2, 2021 I was *not* personally served via Email, or such Email arrived in their spam, as alleged by plaintiff." Significantly, they don't deny that the email addresses set

4

forth in this Court's Order are their correct email addresses (as seems unavoidable, as the emails were sent to their business domain name as well as to two email addresses of their former lawyer). They do not even say that they checked their spam folders before conclusorily "certifying" that such emails "did not arrive[]" in their spam folders. In fact, they do not even aver that they checked their inboxes. The law is well-settled that the Court need not credit conclusory affidavits denying service on a motion to vacate. See DeCurtis v. Ferrandina, 529 F. App'x 86, 86 (2d Cir. 2013); Lopez v. Mohamed, No. 14-cv-4443, 2017 WL 4277154, at *4 (E.D.N.Y. Sept. 26, 2017) ("[A] conclusory sworn denial of receipt of service alone cannot rebut the presumption of service.").

As to willfulness, their obvious attempts to avoid service necessitating the Rule 4(f)(3) Order and their dissembling regarding the receipt of the court-ordered emails on the instant motion probably suffices. But there is more. Defendants do not deny that service was properly made on the LLC defendant through its designated agent, the Secretary of State, as well as the waiver of service signed by defendant Weber. That happened on June 3, 2021 and June 7, 2021, respectively, three to four months before plaintiff filed his motion for a default judgment. The inference is inescapable that these two principles of this closely held defendant received notice that they and their business had been sued, and they chose to do nothing.

But there is yet more. The record shows that plaintiff's attorney moved to extend defendants' time to answer on their behalf when they didn't seek an extension themselves. The Court granted that motion but defendants still never appeared. Significantly, the motion indicates that "[t]his request (including the proposed date) comes at the behest of an attorney who has indicated he is speaking on behalf of the Defendants but will not be representing them in the substance of this matter." That was the attorney, Avraham Yankelewitz, Esq., who

plaintiff served, at two email addresses shown to be his, pursuant to the Rule 4(f)(3) Order. However, defendants have failed to submit an affidavit from Attorney Yankelewitz averring that he never received service at his email addresses on behalf of his clients. It follows that there is no representation from Attorney Yankelewitz that he failed to inform the individual defendants that they had been served (the Rule 4(f)(3) Order required service of the Order itself as well as the summons and complaint). Indeed, the individual defendants on this motion do not disclose any information they obtained from Attorney Yankelewitz – their perfunctory affidavits do not mention his name.

There could hardly be a more thorough showing of willfulness.

Defendants' showing of a meritorious defense also falls well short. It is based on two sentences in defendant Weber's affidavit: "Defendants dispute Plaintiff's claims in their entirety, and can refute same with relevant evidence which are [sic] attached to this Affidavit and Memorandum of Law." After listing the exhibits, defendant Weber asserts "Defendants further dispute the amount of damages alleged by Plaintiff." That's all the showing there is as to a meritorious defense.

The Court has reviewed the exhibits annexed to defendants' moving papers and can make little sense of them. The documents are described in their affidavits as "Exhibit A: …Meehan's Time Records and Work History"; "Exhibit B … copy of the Overtime Conversation"; "Exhibit C: … "Meehan's Unauthorized Expenses"; "Exhibit D … Employment Agreement"; "Exhibit E … Meehan's paystubs." The problem with these documents is that there is no description or even argument in defendants' papers as to what they say or what inferences the Court should draw from them. Instead, defendants' brief contains one sentence: "By virtue of Defendants'

6

dispute of the claims and testimony itself, Defendants have articulated a meritorious defense." That may seem obvious to defendants, but it is not at all apparent to the Court.

For example, Exhibit A consists of 25 pages of plaintiff's time records (according to defendants). It is not possible to interpret them. The print is so fine that it is hardly readable even when expanded. The only observation the Court can make from them is that in all but one of the time periods shown, plaintiff worked more than 40 hours, and if there is more than one reference to overtime on a given day, the Court has missed it – it clearly is not a regular notation. There is no explanation of when the records were made, how they were made, how they were kept, who kept them, or how they contradict any representation that plaintiff made in his motion for default judgment.

Similarly, Exhibit B, described as the "Overtime Conversation," is also not further addressed in any of defendants' submissions. It appears to be a Whatsapp conversation between the individual defendants and plaintiff. It has something to do with plaintiff's parking tickets. The Court does not know what to make of it and defendants have presented no argument.

The Court is not going to go through the remaining exhibits as they are equally opaque and unexplained. The burden to explain them was on defendants, and they have not even attempted to meet it. Defendants would have done well to remember that "[j]udges are not like pigs, hunting for truffles buried in briefs," United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991), nor do they "trudge the dry desert of the record . . . searching for some rumored water hole." Olin Corp. v. Lamorak Ins. Co., 332 F. Supp. 3d 818, 875 (S.D.N.Y. 2018). Defendants have not met their burden of showing a meritorious defense.

Finally, unlike defendants' exhibits, the prejudice to plaintiff is self-evident. Defendants do not deny that they are process evaders and, as this Court's decision indicates with regard to

service, they are also prevaricators.  The Court anticipates that it is going to be hard enough for plaintiff to enforce the judgment against them without returning plaintiff to square one, thereby giving defendants more time to engage in obfuscating conduct.  That is sufficient prejudice to require denial of their motion.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       February 21, 2022

8